**Dorothy H. NOLAN, Appellant,**

v.

**Christopher D. NEELEY–THOMS, Appellee.**

**No. 2008–CA–001046–MR.**

Court of Appeals of Kentucky.

June 5, 2009.

Albert W. Barber, III, Owensboro, KY, for appellant.

Max S. Hartz, Owensboro, KY, for appellee.

Before COMBS, Chief Judge; THOMPSON, Judge; BUCKINGHAM,[1] Senior Judge.

## OPINION

COMBS, Chief Judge.

Dorothy Nolan appeals from a final order and judgment of the Daviess Circuit Court entered on May 2, 2008, dismissing with prejudice her personal injury action against Christopher D. Neeley–Thoms.[2] After our review, we conclude that the trial court did not abuse its discretion by dismissing the complaint. Therefore, we affirm.

On November 4, 2004, Nolan filed a personal injury complaint against Neeley alleging that she had been severely and permanently injured as a result of an automobile collision that had occurred in September 2001. She claimed that the collision had been caused by Neeley's negligence. In his answer, Neeley indicated that he had unexpectedly blacked out immediately before the collision. At the time the action was filed, Nolan was represented by Robert B. Bowers.[3] By agreement of the parties, the court ordered a dismissal of Nolan's claim for property damage on April 8, 2005.

On August 31, 2005, Neeley's counsel filed a motion to compel discovery. Counsel explained that despite numerous communications with Nolan's counsel, his discovery requests (including interrogatories and requests for production of documents) had been ignored for more than nine months. Nolan's answers to the interrogatories and requests for production were filed with the court in October 2005.

On November 2, 2005, Neeley's attorney deposed Nolan. In her deposition, Nolan revealed a series of strenuous activities in which she had recently been engaged. She had roof-coated four mobile homes by carrying a bucket of sealant up a ladder, standing on the roof, and applying the material to the roof surface with a broom. She also described using a chain saw to cut brush from around her rental properties and performing various other maintenance duties. She indicated that she had enrolled in an ice-skating class. Finally, Nolan admitted that she had never been hospitalized as a result of the collision. In February 2006, Bowers sought and was granted permission to withdraw from the representation of Nolan.

On April 4, 2007, Neeley's counsel filed a motion to dismiss for lack of prosecution. Counsel argued that while the collision between the parties' vehicles had occurred in September, 2001, *no pretrial steps* had

---

1. Senior Judge David C. Buckingham sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

2. Neeley testified in his 2007 deposition that his name had been changed in 2006 to delete the hyphenated "-Thoms." Therefore, we shall refer to him as Neeley in this opinion.

3. Before the action was filed, Nolan had been represented by Attorney Steve Thomas. Thomas had secured an offer of settlement, which Nolan rejected.

been taken by the plaintiff since the filing of the action on November 4, 2004. He also noted that no attorney had entered an appearance since Neeley's counsel had withdrawn in February of 2006.

On April 25, 2007, Kelly Fowler made his entry of appearance on Nolan's behalf. Fowler assured the court that Nolan would be "diligently prosecuting her claims against [Neeley] in good faith." Objection to Motion to Dismiss at 1. On May 4, 2007, Nolan propounded her first set of interrogatories and requests for production of documents. On May 17, 2007, Nolan deposed Neeley.

In his deposition, Neeley explained that he had left work at 7:00 a.m. on the day of the collision. He arrived home at about 7:30 a.m. and went to sleep. He awoke at about 3:45 p.m. He then dressed and picked up his girlfriend (now his wife). The couple went out for dinner at about 5:00 p.m. and left the restaurant at about 6:00 p.m. Neeley dropped his girlfriend back at her house and began to drive to work. It was a clear night, and the road was a straight stretch south of Masonville. Neeley was driving at about 40 to 45 miles per hour when he blacked out. He denied that he had consumed had any alcoholic beverages on that evening and also denied any history of fainting spells, dizziness, or blackouts before that time.

Neeley revealed that he had been involved in a one-car accident in June 2001 when his front tire "caught the edge of the road" and "pulled me into a tree." Deposition at 10. He stated that he had sustained a serious head injury as a result of the accident. However, he believed that he had fully recovered from the injury and denied that it had interfered with his ability to drive a vehicle in September 2001. His treating physician did not place him on any medication as a result of the blackout incident before the accident. In August 2007, Nolan obtained copies of Neeley's medical records.

In September 2007, Neeley filed a motion to set a date for trial. Within days, Fowler, Nolan's third attorney, was granted leave to withdraw from the representation.

In November 2007, Neeley filed another motion for a trial date. A detailed pretrial order was entered in early December of 2007. The court indicated to the parties that it intended that the matter be ready for trial well before a jury was summoned. Trial was scheduled for February 5, 2008. Neeley promptly filed his pre-trial compliance. Nolan filed nothing.

A jury was not seated on the morning scheduled for trial. Instead, the court recounted the content of an *ex parte* communication that had been initiated by Nolan *the day before.* The court indicated to Neeley's counsel that Nolan was not ready for trial and that she had requested more time to retain another lawyer. Although Neeley strenuously objected, the court ordered the matter continued until April 16. The court emphasized to Nolan that she must file her pre-trial compliance and be ready for trial at that time—regardless of the circumstances.

When the court called the case again in April, Nolan appeared without an attorney. Once again, the court recounted the contents of an *ex parte* communication initiated by Nolan the day before. Nolan had indicated to the court that she was not ready for trial; *i.e.*, that she could not retain an attorney nor could she represent herself. Neeley's counsel objected to another continuance and recapitulated the many ways in which his client had been prejudiced by Nolan's failure to file witness and exhibit lists and by her failure to provide relevant medical reports despite a direct order from the court. On May 2,

2008, more than a year after Neeley had filed a motion to dismiss for failure to prosecute, the trial court ordered the case dismissed. This appeal followed.

Nolan argues that the trial court abused its discretion by dismissing the action. She contends that the trial court did not carefully consider the circumstances surrounding her failure to prosecute the claims in timely fashion, observing that the court could have imposed a less severe sanction for her failure to abide by provisions of the pre-trial order. While the trial court's order is not detailed, we conclude that the circumstances of this case more than justified the dismissal of Nolan's complaint.

▮ The court dismissed Nolan's complaint pursuant to the provisions of Kentucky Rule(s) of Civil Procedure (CR) 41.02(1), which provides as follows:

> For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him.

Dismissal pursuant to the provisions of CR 41.02(1) is an extreme remedy as it operates as an adjudication on the merits. CR 41.02(3). Consequently, it is incumbent upon the trial court to consider each case in light of the particular circumstances involved. Our standard of review of a trial court's dismissal for lack of prosecution is whether the trial court abused its discretion. *See Jenkins v. City of Lexington*, 528 S.W.2d 729 (Ky.1975).

In *Ward v. Housman*, 809 S.W.2d 717 (Ky.App.1991), a divided panel of this court adopted criteria for reviewing the dismissal of a case as a sanction for dilatory conduct of counsel. While the role of counsel in a plaintiff's failure to prosecute an action is not the issue in this case, the guidelines discussed in *Ward* provide guidance. Those factors include:

1. the extent of the party's personal responsibility;
2. the history of dilatoriness;
3. whether the attorney's conduct was willful and in bad faith;
4. meritoriousness of the claim;
5. prejudice to the other party;
6. alternative sanctions.

*Ward* at 719.

▮ Nolan's counsel contends that it is manifestly unfair to dismiss the complaint simply because Nolan was unable to secure counsel during the period preceding trial. Having reviewed the record and the arguments made on behalf of the parties, we find no abuse of discretion by the trial court in ordering the dismissal of this action. This argument disregards the pattern of dilatory pretrial practice that characterized this case.

▮ Throughout the course of these proceedings, regardless of whether Nolan was represented by counsel, the claims against Neeley were pursued *only when his own counsel took affirmative steps to move the action forward*. The law demands the exercise of due diligence by a litigant, and the plaintiff (whether represented by counsel or proceeding *pro se*) must take steps to bring the action to a final judgment. *Modern Heating & Supply Co. v. Ohio Bank Bldg. & Equip. Co.*, 451 S.W.2d 401 (Ky.1970).

Nolan's refusal to move forward in this case produced numerous unreasonable delays that resulted in a prejudicial burden for Neeley. Neeley complied with court-imposed deadlines and worked diligently to prepare a defense against Nolan's allegations against him. However, Nolan's inaction required that he also assume the burden of advancing the case. Nolan's inattention to her own case caused Neeley and his counsel to have to write numerous

letters asking for responses to written discovery. Eventually, they had to prepare and file a motion with the court to compel her compliance with the rules of civil procedure; to prepare, file, and argue a motion to dismiss for lack of prosecution; to prepare and file numerous motions for a trial date; to clear schedules and prepare finally for trial in February 2008 only to learn that Nolan had made an *ex parte* request for a continuance; and to prepare yet again for trial without the necessary medical records and witness and exhibit information that the court had ordered Neeley to produce.

As the trial court correctly noted, Nolan gave no indication whatsoever that she was actually making a good faith effort to prosecute this action. She never indicated when—if ever—she would be ready to proceed to trial on her claims. Moreover, as to the merits of her case viewed under the *Ward v. Housman* criteria, the facts revealed by Nolan during her deposition raise serious concerns about her chance for success at trial.

█ We cannot say that the trial court erred by failing to consider less severe sanctions against Nolan. *See Polk v. Wimsatt,* 689 S.W.2d 363 (Ky.App.1985). In light of Nolan's refusal to assume control of the action, coupled with her pattern of totally ignoring orders of the trial court, we are persuaded that the circuit court had no alternative other than dismissal.

We affirm the order and judgment of the Daviess Circuit Court.

ALL CONCUR.