**Brian JAROSZEWSKI and Amy Page–Jaroszewski, Appellants,**

v.

**Charles F. FLEGE and Karen Jaroszewski, Appellees.**

No. 2008–SC–000112–DG.

Supreme Court of Kentucky.

Oct. 29, 2009.

Trevor Wayne Wells, Miller & Wells, PLLC, Lexington, KY, Counsel for Appellants.

Jack Scott Gatlin, Peter Wade Whaley, Ackman, Lorenz, Gatlin & Voelker, PLLC, Williamstown, KY, Counsel for Appellee Charles F. Flege.

Ann Geisheimer, Lynch, Cox, Gilman & Mahan, P.S.C., Louisville, KY, Counsel for Appellee Karen Jaroszewski.

Opinion of the Court by Chief Justice MINTON.

## I. *INTRODUCTION.*

We accepted discretionary review of this case to clarify the analysis a trial court must undertake when deciding motions to dismiss for lack of prosecution under Kentucky Rules of Civil Procedure (CR) 41.02(1). We now reaffirm that the trial court must consider all factors relevant to that case in ruling upon such a motion. And we construe recent Kentucky cases as offering guidelines for trial courts on pertinent factors for consideration when confronted with a lack-of-prosecution motion under CR 41.02, rather than as establishing a formula to be applied mechanically. Appellate courts will continue to review dismissals under CR 41.02 for lack of prosecution under an abuse of discretion standard.

## II. *FACTS AND PROCEDURAL HISTORY.*

This case arose from a 1999 interstate highway collision between vehicles operated by Karen Jaroszewski and Charles F. Flege. At the time of the collision, Brian Jaroszewski and Amy Page–Jaroszewski were traveling with Karen[1] in a rented van from New York through northern

1. We will refer to the individual members of the Jaroszewski family involved in this case by their first names in this opinion in order to prevent confusion. We further note that at the time of the accident, Brian and Amy had not yet married, so her name was then Amy Page.

Kentucky. Brian and Amy allegedly suffered serious injuries in the accident. They retained an attorney in New York, who, with the aid of local counsel in Kentucky, filed suit on their behalf against Karen and Flege in the Grant County, Kentucky, circuit court in 2001.

After Karen and Flege filed answers to the complaint, the record reflects that Karen answered interrogatories and a request for production of documents propounded by Brian and Amy later in 2001. The two co-defendants (Karen and Flege) also began requesting discovery from each other, as well as from the Plaintiffs, Brian and Amy.

In January 2002, Karen's counsel filed in the record a notice that Alamo Rent–A–Car, the company from which Karen had rented the van, had recently filed bankruptcy and that "[t]he automatic stay provisions of 11 U.S.C. [United States Code], Section 362(a)(1) 8b (6) would seem to stay any action in the [Kentucky civil action]." The notice stated that the trial court would be informed when the bankruptcy stay was lifted. Despite no written notation in the record that the stay had been lifted, Karen filed a notice to take Flege's deposition several months later in November 2002. In July 2003, Flege filed a notice to take the deposition of Michael Smith, a witness to the accident. However, the record reflects that Plaintiffs Brian and Amy did not file anything in the official court record during the 2002 calendar year.

Later in 2003, Flege filed a notice to schedule a defense medical examination of Brian with a doctor in the Cincinnati area. After Brian objected to having to travel outside New York for the medical examination, Flege filed a motion to compel discovery. The trial court granted the motion and ordered Brian to attend the medical examination in the Cincinnati area. Apart from their response to Flege's motion to compel, Plaintiffs Brian and Amy did not file anything else of record during the 2003 calendar year.

The record reflects that during the 2004 calendar year, Flege filed notice of and took the depositions of Karen and Brian and propounded a second set of interrogatories and a request for production of documents to Brian. Apparently, Brian did not respond to the interrogatories and request for production of documents for approximately six months.[2] Other than Brian's appearing for his deposition, Plaintiffs Brian and Amy again did nothing of record during the 2004 calendar year and through the first few months of 2005.

In June 2005, Karen filed a motion to dismiss for lack of prosecution, citing CR 41.02.[3] Her memorandum in support of this motion argued that "[t]his case has remained inactive" since Flege had taken depositions in early 2004. A few days later, Plaintiffs Brian and Amy filed a motion to set the case for trial.

After filing the motion to set the case for trial, the plaintiffs also filed a response to Karen's motion to dismiss. In the response, the plaintiffs reminded the trial court of the 2002 bankruptcy stay and of the fact that "discovery resumed" after the stay was allegedly lifted. However, at a July 2005 hearing, there was discussion

2. According to the trial court's order dismissing this case for lack of prosecution under CR 41.02(1), Brian answered this second set of interrogatories and request for production of documents on May 19, 2005 (after being served with these discovery requests on November 19, 2004).

3. CR 41.02(1) provides: "For failure of the plaintiff to prosecute or to comply with these rules or any order of the court, a defendant may move for dismissal of an action or of any claim against him."

about whether the stay was ever lifted and whether it actually ever applied to this case. The plaintiffs also told the trial court that the parties had been discussing mediation in 2003 but that Flege had refused to participate in mediation. Flege instead wanted to take Brian's deposition and schedule a defense medical examination. The plaintiffs further noted that after the medical examination and Brian's deposition were completed, they learned in Karen's deposition that she had purchased additional liability insurance coverage from Alamo.

According to the plaintiffs' response, the discovery of Karen's possible additional liability insurance coverage from Alamo prompted their counsel to conduct more factual investigation and legal research into this matter—in addition to trying to comply with requests for Brian's medical information—while also continuing to pursue the possibility of mediation. Thus, the plaintiffs contended in this response that they had been actively pursuing the case, although they acknowledged that the trial court's official record was devoid of documentation of their activities. The plaintiffs' response provided, in part, that:

> Plaintiffs' counsel then began working on discovering the rental car documents and verification of which entity held this coverage. Counsel used much of the period to develop this investigation on the coverage that might be available, as the carrier involved for Karen Jaroszewski has minimal policy limits. Counsel has worked on the file throughout this period; however, it has been work that would not be transparent to the other parties. Counsel did initiate telephone calls to the parties inquiring about resetting the mediation in mid 2004. In October of 2004[,] Counsel for the Plaintiff sent a letter in response to Charles Flege's inquiry of mediation, providing possible dates for mediation. Defense counsel for Mr. Flege then stated they wanted additional medical records and information. Given the fact that Mr. Jaroszewski is in New York, counsel has been working with co-counsel to obtain this information and provide responses to the same.
>
> Accordingly, this case has been pursued and has not been inactive. In fact, just prior to the filing of the Motion to Dismiss, discovery was answered and a discussion was held with the previously scheduled mediator, Steve Wolnitzek. Counsel then forwarded correspondence to all parties advising them to contact her regarding scheduling a mediation; however, if no response was received, a Motion to Set for Trial would be filed. Plaintiff respectfully requests that the Court deny the Motion to Dismiss and set this case for trial and/or mediation.

Meanwhile, Flege filed his own motion to dismiss for lack of prosecution. He alleged that the plaintiffs had failed to file any responsive pleadings in the record in over four years and that all pleadings contained in the trial court's official record were filed by the defendants.[4] He also contended that the plaintiffs had deliberately delayed responding to discovery requests, resulting in some medical records

4. He specifically alleged that "[t]here has not been a responsive pleading filed by the Plaintiffs since their original action over four years ago." We note, however, that the plaintiffs filed their response to Karen's motion to dismiss the same day that Flege filed his motion to dismiss. He also specifically alleged that "[e]very pleading filed with the court has been filed by the Defendants." We assume that Flege intended to say that every pleading, other than the complaint, was filed by the defendants.

becoming unavailable.[5] Stating that plaintiffs had "done absolutely nothing to advance this case," other than filing the motion to set for trial, Flege argued that "[b]ecause of the age of the Defendant [Flege], age of the case, and the potential loss of witnesses, this case should not be allowed to continue."

The plaintiffs filed a response to Flege's motion. In their response, they alleged they had been "cooperating with the Defendants" and had "not failed to answer discovery or respond to requests for the same." They stated their counsel had been diligently trying "to secure requested information" and argued no motion to compel had been filed for lack of cooperation; rather, the Motion to Compel filed concerned whether the defense medical exam would occur in Cincinnati or New York. They claimed that any delay in obtaining medical records was unintentional and, apparently, due to health care providers' lack of cooperation. They noted they provided authorizations to obtain health records and also stated, "Defendants could seek to obtain this information through subpoena or inform counsel of their problem and discuss solutions." They also pointed to their efforts to obtain mediation and their attempts to resolve insurance issues in arguing that their lack of recently filed pleadings or discovery requests did not prove lack of prosecution as "merely because another party notices the deposition does not mean there is a lack of prosecuting one's case if it is moving forward."

Following a hearing, the trial court granted the defendants' motions to dismiss under CR 41.02. The trial court's order briefly found a lack of sufficient effort to prosecute the case over the preceding four years without reasonable explanation:

> The Court believes that this is the very type of case anticipated by the Rule in which there has been almost a complete absence of effort to prosecute the case on behalf of Plaintiffs during the four (4) years since it was filed. The Court finds that no reasonable explanation has been shown by Plaintiffs for this almost complete failure to prosecute their case.

The Plaintiffs then filed a motion to vacate the trial court's dismissal order, supported by a lengthy affidavit detailing plaintiffs' counsel's actions taken over the preceding four years, as well as numerous exhibits including discovery material and correspondence. Following further briefing, the trial court denied the motion to vacate, finding dismissal appropriate because of "the general nature of the dilatory practice of this case" and the lack of "affirmative action" by plaintiffs reflected by both the trial court record and plaintiffs' counsel's affidavit. However, the trial court did take note of telephone conferences, "suggestion of mediation," discovery propounded by plaintiffs, and "taking actions to deal with various issues. . . ."

The plaintiffs then appealed the dismissal to the Court of Appeals. The Court of Appeals vacated the trial court's order dismissing the case and remanded for consideration of the factors listed in *Ward v. Housman*[6] as relevant to determining whether an action should be dismissed for lack of prosecution under CR 41.02. On remand, the defendants each filed renewed motions to dismiss for lack of prosecution;

5. Allegedly, Flege first heard of some prior injuries at Brian's deposition and was unable to obtain medical records relating to these injuries from medical providers, who stated that the records were too old to be available.

6. 809 S.W.2d 717, 719 (Ky.App.1991).

and the plaintiffs filed a response, all addressing each of the factors listed in Ward. The trial court granted the renewed motions to dismiss, discussing each of the six factors listed in *Ward.*

The Court of Appeals affirmed, noting the trial court's analysis of the *Ward* factors and the lack of activity of record by the plaintiffs since 2001. In doing so, it stated that those plaintiffs who fail to make a record of their activities risk having their cases dismissed for lack of prosecution. We took discretionary review to clarify when a motion to dismiss for lack of prosecution under CR 41.02 can properly be granted.

## III. *ANALYSIS.*

This case raises interesting questions about what constitutes prosecution of a civil lawsuit and when a trial court may properly dismiss a case for lack of prosecution. Is it sufficient to show that counsel for a plaintiff or a self-represented litigant has continued to work on a case in some manner, albeit reactively rather than proactively, to establish prosecution? Does seeking mediation or other forms of alternative dispute resolution count as prosecution? Is it necessary to file papers periodically in the trial court's record to withstand a CR 41.02 motion to dismiss for lack of prosecution, as the Court of Appeals opinion suggests? Must the trial court follow a certain list of factors, such as those set forth in *Ward,* in an order dismissing for lack of prosecution?

### A. *We Address Only CR 41.02 Dismissals, Not CR 77.02 Dismissals, in this Opinion.*

The case before us presents a question of whether the trial court properly dismissed a case for lack of prosecution upon a party's motion under CR 41.02(1). We do not have before us a CR 77.02(2) [7] dismissal, which is often termed an "administrative dismissal," but which is sometimes also termed a dismissal for lack of prosecution. Our holdings today apply only to resolution of motions to dismiss for lack of prosecution under CR 41.02(1), not to determining the propriety of CR 77.02(2) dismissals, which differ from CR 41.02(1) dismissals in many respects, such as CR 77.02(2) dismissals being made without prejudice; by contrast, those under CR 41.02(1) are made with prejudice.[8]

### B. *Prosecution Entails Active Attempts to Resolve the Case, Recognizing that Resolution Could Take Different Forms.*

■ Before addressing when a trial court may properly grant a motion to dismiss for lack of prosecution, we must necessarily consider what prosecution of a civil action means. BLACK'S LAW DICTIONARY (8th ed.2004) defines the phrase *dismissed for want of prosecution* as "(Of a

7. CR 77.02(2) states: "At least once each year trial courts shall review all pending actions on their dockets. Notice shall be given to each attorney of record of every case in which no pretrial step has been taken within the last year, that the case will be dismissed in thirty days for want of prosecution except for good cause shown. The court shall enter an order dismissing without prejudice each case in which no answer or an insufficient answer to the notice is made."

8. *See Manning v. Wilkinson,* 264 S.W.3d 620, 624 (Ky.App.2007) (noting that CR 77.02 dismissals are without prejudice, unlike CR 41.02 dismissals; and caselaw regarding CR 41.02 dismissals did not necessarily govern CR 77.02 dismissals as "CR 41.02 and CR 77.02 serve different functions and thus have different and distinct requirements.").

case) removed from the court's docket because the plaintiff has failed to pursue the case diligently toward completion." So prosecution in this context essentially entails "pursu[ing] the case diligently toward completion" or, in other words, actually working to get the case resolved—not just keeping it on a court's docket or occasionally working on the file without actively attempting to resolve matters in dispute.

Naturally, the path to resolution of a case may take many different turns. For example, the parties might reach a resolution by agreement through alternative dispute resolution, rather than by a jury trial. Thus, pursuing mediation (at least where all parties are agreeable to trying mediation) could be one form of prosecuting one's case, even though the steps involved in actively pursuing mediation would not necessarily be reflected in the official court record. But where it is clear that mediation will not resolve the case, one cannot claim to be diligently prosecuting one's case by simply continuing to ask for mediation while otherwise delaying the final resolution of the case. In fact, we believe prosecution—pursuing the case diligently until completion—involves, not only preparing one's own case, but also reasonably cooperating with the opponent's active attempts to prepare its case, such as responding timely to discovery requests. While we recognize that prosecution may take many forms, we also recognize a trial court's broad discretion to determine whether dismissal for lack of prosecution is appropriate under the unique factual circumstances of each case.

C. *Proper Consideration of CR 41.02 Motions to Dismiss for Lack of Prosecution is Fact-Specific, not Formulaic; Appellate Courts Review Trial Court Decision under Abuse of Discretion Standard.*

Having granted discretionary review to clarify for the bench and bar when a motion to dismiss for lack of prosecution may properly be granted, we acknowledge that proper consideration of such motions cannot be reduced to a simple formula because:

> There is no absolute right to dismissal for a plaintiff's failure to prosecute and no exact rule can be laid down as to when a court is justified in dismissing a case for the plaintiff's failure to prosecute or for delay in prosecuting his or her action; each case must be looked at with regard to its own peculiar procedural history and the situation at the time of dismissal.[9]

As our case law has long held, these necessarily fact-specific determinations are left to the sound discretion of the trial court; and reversal of these determinations is warranted only where the trial court has abused its discretion.[10]

D. *We Construe Precedent on CR 41.02 Dismissals for Lack of Prosecution as Requiring Consideration of All Relevant Factors, but Not as Requiring Discussion of Every Factor Listed in Caselaw, such as Ward.*

In determining whether the trial court abused its discretion in dismissing a case under CR 41.02, appellate courts must be able to assess whether a trial court considered all relevant facts and circumstances.

9. 24 Am.Jur.2d *Dismissal, Discontinuance and Nonsuit* § 63 (2009) (footnotes omitted).

10. *See, e.g., Gill v. Gill,* 455 S.W.2d 545, 546 (Ky.1970) (in reversing dismissal for lack of prosecution under abuse of discretion standard, recognizing that "[e]ach case must be considered in the light of the particular circumstances involved and length of time is not alone the test of diligence.").

Motivated by the need for a clear written record of the facts and circumstances that moved the trial court to dismiss a case for lack of prosecution, the Court of Appeals developed precedent beginning with *Ward* that suggests or requires the trial court to analyze certain listed factors. While *Ward* has been useful by particularly encouraging the trial court to make specific findings on the record, and while this precedent undoubtedly gives trial courts some guidance about what to consider, we hesitate to embrace a formulaic approach where certain listed factors must always be discussed, and other relevant factors may not be discussed. Since the issue of whether a case must be dismissed for lack of prosecution is inherently fact-specific, demanding that a rigid list of factors must be addressed by the trial court in each case is inconsistent with the traditional "totality of the circumstances" approach.

■ In fact, perhaps *Ward* is sometimes misunderstood as clearly holding that trial courts must always explicitly analyze the six particular factors listed in it in ruling on a motion to dismiss for want of prosecution. Conversely, this precedent is also misunderstood to suggest that the trial court's dismissal order is unassailable on appeal if it recites and attempts to analyze each of the six listed factors. In contrast to this misunderstanding, we hold that the propriety of the trial court's ruling does not necessarily hinge on its discussing the six particular factors listed in *Ward.* Rather, to rule properly on a motion to dismiss for lack of prosecution, the trial court must assess all factors relevant to that particular case, which might include some or all factors listed in *Ward* and may include other factors.[11]

E. *No CR 41.02 Motion to Dismiss for Lack of Prosecution Made in Ward; Rather, Trial Court Sua Sponte Granted Summary Judgment as Discovery Sanction.*

Considering that the factors listed in *Ward* are cited with great frequency in cases involving motions to dismiss for lack of prosecution, it is interesting to note that the factors appear as dicta in the opinion because no such motion to dismiss was actually made in *Ward.*[12] Rather, the trial

11. Although we decline to adopt any specific set of factors that must be considered by trial courts, we note that other jurisdictions have listed other factors as possibly appropriate for consideration in determining the propriety of dismissing a case for lack of prosecution. *See, e.g., Lee v. Friedman,* 637 N.E.2d 1318, 1320 (Ind.Ct.App.1994) (appropriate factors for determining whether trial court abused discretion in granting dismissal for lack of prosecution "include: the length of the delay; the reason for the delay; the degree of personal responsibility on the part of the plaintiff; the degree to which the plaintiff will be charged for the acts of his attorney; the amount of prejudice to defendant caused by the delay; the presence or absence of a lengthy history of having deliberately proceeded in a dilatory fashion; the existence and effectiveness of sanctions less drastic than dismissal which fulfill the purposes of the rules and the desire to avoid court congestion; the desirability of deciding the case on the merits; and the extent to which plaintiff has been stirred into action by a threat of dismissal as opposed to diligence on the plaintiff's part."); *Lowery v. Atterbury,* 113 N.M. 71, 823 P.2d 313, 316 (1992) (adopting flexible totality of the circumstances standard for determining the propriety of dismissing for lack of prosecution and indicating that various factors may be considered, including "(1) whether the plaintiff personally contributed to the delay; (2) whether the delay caused the defendant actual prejudice; and (3) whether the delay can be characterized as intentional.").

12. *Ward,* 809 S.W.2d at 719 ("the appellee/defendant Housman did not move for a dismissal; he moved for the exclusion of testimony or alternatively for a continuance. The result that he got was more than what he asked for.").

court, acting on its own motion, had granted a summary judgment in favor of the defendant as a sanction for the plaintiffs failure to comply with discovery orders. Recognizing the impropriety of such a summary judgment as a sanction, the Court of Appeals characterized the trial court's summary judgment as actually a dismissal for want of prosecution and attempted to provide guidance on when a trial court could properly grant a CR 41.02 motion to dismiss for lack of prosecution.

*Ward* was a medical negligence case in which the plaintiff had failed to comply with the trial court's time deadline for identifying its trial expert. By the time the plaintiff identified its trial expert several months after the trial court's deadline for doing so had passed, the defendant had filed a motion to exclude the expert's testimony or, in the alternative, a motion for a continuance of the scheduled trial. When the trial court ordered the expert's testimony excluded, the plaintiffs moved for reconsideration because they would be unable to withstand a directed verdict motion without expert testimony. The trial court denied the motion for reconsideration and then entered what it termed a "summary judgment" dismissing the case.[13]

In reviewing the propriety of this summary judgment, the Court of Appeals reviewed the case under the usual Kentucky summary judgment standards and determined that the summary judgment was improper because of the lack of showing of no genuine issue of material fact. Instead, the Court of Appeals found the summary judgment had been improperly granted as a sanction for discovery delays:

> the case at hand was not one where the dismissed party had no expert but was prevented from using the expert's testimony as a sanctioning technique for the dilatory conduct of the Wards' counsel. CR 56, Summary Judgments, is not to be used as a sanctioning tool of the trial courts.[14]

F. *Ward Court Provided Guidelines, Not Rigid Requirements, for Consideration of Motions to Dismiss for Lack of Prosecution.*

Although the trial court had actually granted summary judgment, rather than dismissing under CR 41.02 for lack of prosecution, the Court of Appeals in *Ward* found it more appropriate to review the judgment in favor of the defendant as a dismissal for failure to prosecute under CR 41.02(1)—possibly anticipating that such a motion might be filed upon remand. Noting that the defendant had not even filed a motion to dismiss, the Court of Appeals attempted to provide guidance on how a trial court should rule on a motion to dismiss for failure to prosecute. Stating that "the trial court must take care in analyzing the circumstances and must justify the extreme action of depriving the parties of their trial," the Court of Appeals cited with approval the federal (Third Circuit) case of *Scarborough v. Eubanks*[15] and suggested "it would be well for our trial courts to consider the *Scarborough* case" and the factors listed in *Scarborough:*

1) the extent of the party's personal responsibility;
2) the history of dilatoriness;
3) whether the attorney's conduct was willful and in bad faith;
4) meritoriousness of the claim;
5) prejudice to the other party; and

13. *Id.* at 718.

14. *Id.* at 719.

15. 747 F.2d 871 (3rd Cir.1984).

6) alternative sanctions.[16]

While suggesting that it would "be well" for trial courts to analyze these factors in determining whether to grant CR 41.02 motions to dismiss for lack of prosecution, the Court of Appeals in *Ward* never stated that trial courts must analyze each individual factor listed in *Scarborough.*

G. *Dismissal in Ward Overturned for Failure to Assess All Relevant Factors, Not for Lack of Explicit Discussion of Each Factor Listed in Scarborough.*

Despite its recommendation that "it would be well" for trial courts to consider the factors listed in *Scarborough* in determining whether to grant motions to dismiss for lack of prosecution under CR 41.02, the Court of Appeals in *Ward* did not reverse the dismissal because of the lack of discussion of each of these factors. Rather, the Court of Appeals concluded that the trial court had abused its discretion because the dismissal stemmed from a "one-time dilatory act of counsel" and occurred without consideration of alternative sanctions.[17] So, essentially, the Court of Appeals reversed the dismissal in *Ward*—not because the trial court failed to consider each of the six particular factors suggested by *Scarborough*—but because the trial court apparently focused on one isolated instance of delay without considering alternative sanctions or other relevant factors before taking the extreme measure of dismissing the case.

In other cases, the Court of Appeals has similarly reversed dismissals where the trial court's order does not reflect that it considered all relevant factors, such as those factors listed in *Ward* or *Scarborough,* but simply focused on a single dilatory act or a period of delay.[18] This was consistent with our established precedent, which states that "[e]ach case must be considered in the light of the particular circumstances involved and length of time is not alone the test of diligence." [19] However, to the extent that other cases have held or suggested that all factors listed in *Ward* must always be fully discussed in all orders dismissing cases for lack of prosecution under CR 41.02, those cases are overruled.[20]

**16.** *Ward,* 809 S.W.2d at 719, *citing Scarborough,* 747 F.2d at 875–78.

**17.** *Ward,* 809 S.W.2d at 720.

**18.** *See, e.g., Toler v. Rapid American,* 190 S.W.3d 348, 351 (Ky.App.2006) ("As the trial court's decision to dismiss here appears to have been based almost exclusively on the Tolers' inaction from January 2002 to May 2004, we believe that the Ward factors are particularly relevant. Accordingly, we find ourselves hesitant to affirm or reverse the trial court because the record is unclear as to whether the *Ward* factors were properly considered or even considered at all. It instead reflects that the court's decision was based almost exclusively upon the fact that there was a two-and-a-half-year lack of activity. While such a fact must certainly be considered in determining whether to dismiss a case for lack of prosecution, it is not the only fact to be examined."); *Stapleton v. Shower,* 251 S.W.3d 341, 343–44 (Ky.App.2008) (vacating dismissal for lack of prosecution as "[i]n the case now before this Court, there is absolutely no reference to any of the *Ward* factors. As such, it is virtually impossible for this court to determine whether the dismissal was based solely on a single dilatory act or whether the trial court made its determination after considering the relevant factors set forth in *Ward.*").

**19.** *Gill,* 455 S.W.2d at 546.

**20.** This holding is consistent with a recent Court of Appeals case, in which the Court of Appeals affirmed a trial court order dismissing a case for lack of prosecution under CR 41.02. *See Nolan v. Neeley–Thoms,* 290 S.W.3d 89 (Ky.App.2009). Because the opinion of the Court of Appeals characterizes the trial court's order as "not detailed" (*id.* at 92)

H. *Although Mandated Discussion of All Ward Factors Law of the Case for this Case, Future Cases to be Analyzed under Totality of the Circumstances.*

■ In the case at hand, the application of *Ward* is law of the case because the Court of Appeals remanded it for consideration of these factors on the appeal of the initial dismissal; and discretionary review was not sought from the opinion of the Court of Appeals vacating and remanding the initial dismissal.[21]

■ In the future, the trial court must base its decision to dismiss under CR 41.02 upon the totality of the circumstances; and it should take into account all relevant factors, whether or not those factors are listed in *Ward*. Explicit consideration of each individual factor listed in *Ward* is not required, although we encourage trial courts to address any factors listed in *Ward* that are relevant for consideration in that particular case.

While such cases as *Ward* may have been helpful in identifying some of the relevant factors in determining whether dismissal for lack of prosecution is appropriate in a particular case under the totality of the circumstances, perhaps it is also helpful to consider the policies and purposes behind such dismissals in holistically deciding such cases, rather than simply reciting formulaic lists.

The basic purposes of dismissals for want of prosecution under CR 41.02 and its federal counterpart, Fed.R.Civ.P. 41(b), are (1) to protect the defendant from the prejudice of being a defendant in a lawsuit for a protracted period (including monetary and psychological costs, as well as problems developing one's defense where delay creates loss of or difficulty obtaining evidence); and (2) "to preserve the integrity of the judicial system" by encouraging quick resolution of cases, "disposing of inactive cases [that] clog the calendar" and sanctioning "misuse or abuse of the legal system." [22]

■ Trial courts must make explicit findings on the record so that the parties and appellate courts will be properly apprised of the basis for the trial court's rulings; and the appellate courts can assess whether the trial court properly considered the totality of the circumstances in dismissing the case.

I. *Trial Court Did Not Abuse its Discretion in Dismissing Plaintiffs' Case for Lack of Prosecution, Given the Totality of the Circumstances.*

Applying the totality of the circumstances test in the case at hand, we conclude that the trial court properly weighed the totality of the circumstances (including the weighing of relevant concerns listed in *Ward* and other factors not listed in

and does not reference any specific analysis of the *Ward* factors by the trial court, it appears that the trial court likely failed to analyze all of the factors listed in *Ward*. The Court of Appeals cited *Ward*, carefully listing each Ward factor, and indicated that they provide "guidance" in ruling upon CR 41.02(1) motions. *Id.* After discussing some of the considerations listed in Ward, the Court of Appeals ultimately determined that the trial court did not abuse its discretion in dismissing the case under CR 41.02(1) for lack of prosecution. *Id.* The use of *Ward* by the Court of Appeals as an illustrative guideline, rather than a mandatory checklist, was proper and consistent with the totality of the circumstances test.

21. *Williamson v. Commonwealth*, 767 S.W.2d 323, 326 (Ky.1989) (party must challenge adverse court ruling in some manner, such as moving for discretionary review on that issue, or be bound by the court's decision).

22. Russell G. Vineyard, Note, Dismissal with Prejudice for Failure to Prosecute: Visiting the Sins of the Attorney Upon the Client, 22 Ga. L.Rev. 195, 204–05 (1987).

Ward) and did not abuse its discretion in dismissing this case for lack of prosecution. As the trial court utilized the six listed Ward factors as a framework for its analysis, our review necessarily makes references to its findings on the listed Ward factors. However, we again emphasize that the propriety of an order dismissing a case under CR 41.02(1) for lack of prosecution depends upon whether the trial court abused its discretion under all relevant facts and circumstances, not on whether the trial court recited the six factors listed in Ward.

1. *Extent of Party's Personal Responsibility for Delay.*

■ In addressing the first factor listed in *Ward,* "extent of the party's personal responsibility" for delay, the trial court found the plaintiffs responsible for delay, based upon their failure to seek a trial date until the motion to dismiss had been filed and their delay in providing information about prior injuries. It also found the lack of a motion to compel responses to requests for information on prior injuries not dispositive, noting its view that counsel requesting discovery should not have to file a motion to compel to obtain discovery provided for through the civil rules. We agree with the trial court that the plaintiffs' failure to seek a trial date before the filing of a motion to dismiss was an appropriate factor to consider and was relevant to their degree of personal responsibility. And the trial court was free to reject the plaintiffs' explanation that they had already been planning to seek a trial date because the record shows that a motion to dismiss was actually filed first, and the trial court was not required to accept plaintiffs' assertions concerning their intent.[23]

The trial court also properly considered delay in responding to requests for information concerning prior injuries as a relevant factor to consider and indicative of personal responsibility. Although Brian and Amy claim that the trial court did not properly consider the facts of Brian's home incarceration and a medical authorization for Flege to obtain Brian's medical records directly from the medical providers in assessing their personal responsibility for this matter, we note that they do not affirmatively allege that they had no way of obtaining the medical information for the whole period of delay because of Brian's incarceration,[24] nor do they address whether despite any medical authorization, access to the medical records might simply be barred because of the age of the records by that point. Given the clear evidence of delay in providing medical information and lack of compelling explanations to justify shifting responsibility to others for the delay, we find no reversible error in the trial court's consideration of this factor.

2. *History of Dilatoriness.*

■ As for the second factor listed in *Ward,* whether plaintiffs were "dilatory,"[25]

23. We have not been asked to determine whether the trial court erred by not granting the plaintiffs' motion to set for trial. Presumably, the trial court did not view setting a trial date to be a fair way to prompt final resolution of the case because it found that the plaintiffs' delays in responding to defendants' discovery requests impeded the defendants' ability to establish their defenses.

24. Appellants assert that it was "difficult" for Brian to obtain medical records during his incarceration; they do not say it was impossible. They also say that "he was incarcerated in his home for *much* of the time the case was pending" but do not allege that the entire delay is explained by his incarceration. (Emphasis added.)

25. BLACK'S LAW DICTIONARY (8th ed.2004) defines *dilatory* as "[t]ending to cause delay

the trial court noted their failure to initiate activity of record in the case and noted that all of their court filings after 2001 were merely responsive to the defendants' discovery requests, rather than affirmative, proactive filings. While we do not hold that a plaintiff must swell the official record with filings in order to prosecute his case, nonetheless, it was permissible for the trial court to consider the fact that for years, plaintiffs had acted responsively, rather than proactively, as demonstrated by the filings of record.

The statement of the Court of Appeals that one fails to make a record upon peril of having a case dismissed for lack of prosecution is certainly applicable in terms of administrative dismissals under CR 77.02. But we encourage parties to pursue diligent resolution of their cases by appropriate means, such as conducting discovery in a timely manner under the civil rules or pursuing alternative dispute resolution. And some of these activities may not always be noted in the trial court's record. Certainly, not all of counsel's work in pursuit of resolution of the case makes its way into the official record of a case. So the relevant inquiry in determining whether a case should be dismissed with prejudice under CR 41.02 is whether the party has been diligently pursuing resolution of the case—not necessarily whether the party has recently been filing documents in the trial court record.

In other cases with other circumstances, trial courts might still find that a plaintiff was continuing to prosecute its case despite having only responded to defense discovery requests rather than filing its own requests, depending on such factors as the number of defense requests and the thoroughness and speed of the plaintiff's responses to discovery requests. Here, the relatively few discovery requests made and the plaintiffs' pattern of delay in responding to these requests support the trial court's findings of dilatoriness on the part of plaintiffs. Generally, it is entirely proper for a trial court to consider that a plaintiff has only been acting reactively and has shown no inclination to take affirmative steps to advance resolution of the case for an unreasonable period of time as a relevant factor indicating that the plaintiff has not been actively prosecuting the case.

3. *Whether Attorney's Conduct Willful and In Bad Faith.*

As for the third listed *Ward* factor, whether the attorney's conduct was willful and in bad faith, the trial court's finding is confusing because the trial court states that "plaintiff's attorney's conduct was willful and in bad faith" as evidenced by the delay in procuring information on Brian's prior injuries. The trial court apparently did not find the delay in supplying information on Brian's prior injuries to be adequately explained by local counsel's affidavit. But then the trial court states that local counsel was disadvantaged by "action or lack of action" by New York counsel. Nonetheless, it is clear that the trial court found this delay in providing information to show willful, bad faith apparently by one or more of the plaintiffs' attorneys; and this finding of bad faith is not clearly erroneous nor does it reflect an abuse of discretion. We would also note that it is appropriate for the trial court to address whether a party, in addition to counsel, has acted willfully and in bad faith, particularly in cases of self-representation.

4. *Merits of Plaintiff's Claim.*

As for the fourth factor listed in *Ward,* whether the plaintiff's claim has

<the judge's opinion criticized the lawyer's persistent dilatory tactics>."

merit, the trial court found that the delay in responding to discovery requests suggested a lack of merit and that defendant Flege's liability seemed questionable based on its review of witness Smith's deposition. Admittedly, we have some doubts concerning the trial court's analysis of this particular factor; and we cannot wholeheartedly accept authority encouraging the trial court to consider the merits when ruling on a motion to dismiss for lack of prosecution. Often, in a case where the plaintiff has purportedly failed to prosecute, the trial court simply would not have a sufficient record to determine whether the claim had merit in the sense of the plaintiff's likelihood of success on the merits.

The plaintiffs argue that this "meritoriousness" factor should be analyzed only in terms of whether the plaintiff failed to state a claim;[26] but if there is such a failure to state a claim, the defendant would more appropriately obtain dismissal under CR 12 (state equiv. of Fed. R.Civ.P. 12(b)(6)), rather than CR 41.02 (failure to prosecute). So, in a typical case, the meritorious nature of a plaintiff's claim may be difficult to assess and of minimal value because even a meritorious case may be dismissed under CR 41.02 if the totality of the circumstances shows that the plaintiff is not actively prosecuting the case.

While we do not encourage trial courts to assess the merits of a claim in ruling on a motion to dismiss for want of prosecution on poorly developed records, we do not think the trial court here abused its discretion in considering, among other relevant factors, the fact of questionable liability of one defendant. We do recognize here though that under the facts of this case, clearly, someone would be presumably liable to the plaintiffs, who were Karen's passengers at the time of the interstate collision. If the questionable liability here of one of the two co-defendants were the sole factor considered, we might be apt to conclude that the trial court had abused its discretion. But under the facts of this case, we do not think it was reversible error for the trial court to consider questionable liability of one defendant as one factor to consider or to infer possible lack of merit from inadequately explained delay.

5. *Prejudice.*

The trial court found the fifth factor, prejudice, weighed in favor of dismissal. It found prejudice in "lack of availability of witnesses" and "lack of recollection of the accident by any witnesses not yet called by deposition," although, apparently, at least some fact witnesses have already been deposed; and the trial court does not specifically identify any witnesses as having become unavailable.

The trial court also generally found that the defendants were prejudiced[27] by "spoliation and/or lack of evidence in regard to both liability and/or damages...."[28] The

26. *See Scarborough,* 747 F.2d at 875 ("The meritoriousness of the claim for this purpose [decisions on whether a case must be dismissed for lack of prosecution under federal rules] must be evaluated on the basis of the facial validity of the pleadings and not on summary judgment standards.").

27. Of course, prejudice stemming from delay would presumably cut both ways since a delay in bringing the case to trial would dim the memories of witnesses for both the plaintiffs and the defendants.

28. Although the trial court's finding of spoliation of evidence is not made with much specificity, one possible specific evidentiary issue discussed at oral argument was changes to the highway since the accident. However, no party has pointed to any specific place in the record to show whether any party actually engaged an accident reconstructionist imme-

trial court also made reference to the fact that the plaintiffs had not noticed depositions themselves, which may not in itself have been determinative of their intent to prosecute so long as they were cooperative with defense requests. So some of the trial court's findings on prejudice seem generic or speculative. But the trial court did specifically note "the absence of medical records requested through discovery and not obtained due to the length of time or inability to access them[,]" which seems to be substantial evidence of specified prejudice. As there does seem to be at least some evidence of specific prejudice, the finding of prejudice is not clearly erroneous and does not reflect an abuse of discretion.

### 6. *Lack of Availability of Alternative Sanctions.*

As for the sixth factor, lack of availability of alternative sanctions, the trial court noted that there were multiple instances of delay here, not just one act of delay as in *Ward,* so it did not view other sanctions as adequate. Apparently, the trial court here did not employ alternative sanctions first before dismissing the case.[29] Naturally, we recognize that dismissal is an extreme remedy; and the trial court must carefully determine whether, under the facts and circumstances of the case, this extreme remedy is truly warranted[30] or whether alternative sanctions might suffice to deal with problems of delay.[31] Under the facts of this case, however, we cannot say that the trial court abused its discretion in dismissing this case rather than employing alternative sanctions, especially in light of the record of substantial delays in this case.

### J. *Plaintiffs' Lack of Violation of Court Orders and Insurance Coverage Issues are Relevant Considerations But Did Not Mandate Denial of Motion to Dismiss for Lack of Prosecution.*

In addition to considering factors listed in *Ward,* it is appropriate for the trial court to consider other relevant circumstances.[32] For instance, the plaintiffs argued in the trial court that they were in violation of no court orders; and they were attempting to resolve some insurance coverage issues with Alamo's insurer. Perhaps the plaintiffs understandably wished to resolve coverage issues before investing

diately after the accident or had the opportunity to do so.

29. Other than the motion to compel filed to obtain a medical examination of Brian in Cincinnati, no motion to compel was filed in this case.

30. *Ward,* 809 S.W.2d at 719 ("In ruling on a motion for involuntary dismissal, the trial court must take care in analyzing the circumstances and must justify the extreme action of depriving the parties of their trial.").

31. Appellants cite *Little v. Yeutter,* 984 F.2d 160, 162 (6th Cir.1993) for the proposition that "[a]bsent a showing of a clear record of delay or contumacious conduct, the order of dismissal is an abuse of discretion, such that the district court is limited to lesser sanctions designed to achieve compliance." We note that federal case law construing federal rules (even those similar to our state court rules) does not control how we construe our state court rules. In any event, even though there perhaps was not "contumacious conduct" here, there is evidence to support a finding of a "clear record of delay"; and, thus, we cannot say the trial court erred in granting dismissal rather than employing alternative sanctions.

32. In fact, while analyzing the factors listed in *Ward* upon remand, the trial court also raised concerns not specifically addressed in *Ward,* such as looking at whether a party took affirmative action or merely responded to the other side's requests and demands. Generally, it appears that additional factors considered by the trial court were appropriate and relevant.

further time and money in trying to resolve such matters as liability on their claims. These could be relevant considerations in addition to those listed in *Ward.* Nonetheless, the fact that a party is not in violation of a court order does not necessarily show that active efforts to prosecute the case were made. The fact that the party is concerned about liability insurance coverage does not excuse delay in responding to the other party's requests for discovery, for example, because cooperating with the other side's discovery requests would help to bring the case to a timely resolution.

K. *Given Consideration of Multiple Relevant Factors, Trial Court Did Not Abuse its Discretion in Dismissing Case for Lack of Prosecution.*

In sum, given all the relevant factors in this case, we discern no abuse of discretion in the trial court's granting the defendants' motions to dismiss for lack of prosecution. Given the multiple instances of delay and lack of evidence of the plaintiffs actively seeking to resolve their case, we cannot conclude that the trial court abused its discretion in granting the motion to dismiss for lack of prosecution.

IV. *CONCLUSION.*

For the foregoing reasons, this Court affirms the decision of the Court of Appeals affirming the trial court's order dismissing for lack of prosecution.

All sitting. ABRAMSON, CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur.

VENTERS, J., concurs by separate opinion.

VENTERS, Justice, concurring.

I concur with Chief Justice Minton's opinion that the circumstances of this case weigh in favor of affirming the trial judge's dismissal of this action; and I agree that a trial judge's decision on whether to dismiss a case under CR 41.02 is not exclusively governed by the factors recited in *Ward v. Housman,* 809 S.W.2d 717 (Ky.App.1991). I write separately to make an additional point.

An essential consideration that for a trial judge ruling on a defendant's motion under CR 41.02 is whether the defendant himself had undertaken any effort to move the case toward resolution before seeking dismissal with prejudice. The notion that a defendant, aggrieved by the burden of a lawsuit, bears some measure of responsibility for mitigating his own misery is well known to the law. The criminal law counterpart of a civil defendant's CR 41.02 motion is a criminal defendant's motion to dismiss for lack of a speedy trial. We held very recently in *Miller v. Commonwealth,* 283 S.W.3d 690, 702 (Ky.2009), quoting the United States Supreme Court in *Barker v. Wingo:*[33]

> (t)he defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.*

(Emphasis added).

A defendant in a civil case has no less of a duty to move his own case forward than does his criminal law counterpart. Just as the criminal defendant finds it "difficult" to win a dismissal for lack of prosecution when he has failed to complain of the delay, so, too, a civil defendant's claim of

33. 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) at 532.

prejudicial delay under CR 41.02 should be weighed against his own effort, or lack of effort, to move the case forward before seeking the ultimate sanction of dismissal.