RENDERED: MARCH 20, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0650-MR

PAMELA BLAIR                                   APPELLANT

|  |  |
|---|---|
| v. | APPEAL FROM JEFFERSON CIRCUIT COURT<br>HONORABLE JULIE KAELIN, JUDGE<br>ACTION NOS. 19-CI-005241, 19-CI-005335, AND 20-CI-006226 |

SANCTUARY BLUFF
HOMEOWNERS ASSOCIATION,
INC.; DAVID WEINSTEIN; DWIGHT
HICKERSON; EXP REALTY LLC;
GILEZAN REALTY LLC; JAMIE
SHEARER; JAN WADE; LEN
CHOPOVSKY (a/k/a LEONID
CHOPOVSKY); LISA PAYNE (a/k/a
LISA EVERETT); PAMELA ZANNI;
RANDALL CAMPBELL; RENU
KAKAR; SHAM KAKAR;
STEPHANIE GILEZAN; SUNRISE
CUSTOM HOMES; T.J. FEDERER
(a/k/a THOMAS JOSEPH FEDERER);
AND TOM BERWAGER                               APPELLEES

AND

NO. 2024-CA-0933-MR

PAMELA BLAIR                                                    APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE JULIE KAELIN, JUDGE
          ACTION NOS. 19-CI-005241, 19-CI-005335, AND 20-CI-006226


MOHANA ARLA; EXP REALTY,
LLC; GILEZAN REALTY, LLC;
RAMA ARLA; RANDALL
CAMPBELL; RAP PROPERTIES,
LLC; REGINA BIDDLE; RENU
KAKAR; RON BIDDLE; SHAM
KAKAR; STEPHANIE GILEZAN;
AND SUNRISE CUSTOM HOMES                                        APPELLEES

AND


                              NO. 2024-CA-1065-MR


PAMELA BLAIR                                                    APPELLANT


                        APPEAL FROM JEFFERSON CIRCUIT COURT
v.                      HONORABLE JULIE KAELIN, JUDGE
          ACTION NOS. 19-CI-005241, 19-CI-005335, AND 20-CI-006226


SANCTUARY BLUFF
HOMEOWNERS ASSOCIATION,
INC.; EXP REALTY, LLC; GILEZAN
REALTY; RANDALL CAMPBELL;
RENU KAKAR; SHAM KAKAR;
STEPHANIE GILEZAN; AND
SUNRISE CUSTOM HOMES                                            APPELLEES

AND

NO. 2024-CA-1119-MR

PAMELA BLAIR                                                          APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JULIE KAELIN, JUDGE
ACTION NOS. 19-CI-005241, 19-CI-005335, AND 20-CI-006226

GARY SHEARER; EXP REALTY,
LLC; GDS BUILDER AND
REMODELER; GILEZAN REALTY,
LLC; JAMIE SHEARER; MOHANA
ARLA; RAMA ARLA; RANDALL
CAMPBELL; RAP PROPERTIES,
LLC; REGINA BIDDLE; RENU
KAKAR; RON BIDDLE; SHAM
KAKAR; STEPHANIE GILEZAN;
AND SUNRISE CUSTOM HOMES                                              APPELLEES

AND

NO. 2025-CA-0003-MR

PAMELA D. BLAIR                                                       APPELLANT

APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 19-CI-005241, 19-CI-005335, & 20-CI-006226

SANCTUARY BLUFF
HOMEOWNERS ASSOCIATION,
INC.; DAVID WEINSTEIN; DWIGHT

HICKERSON; EXP REALTY, LLC;
GARY SHEARER; GDS BUILDER
AND REMODELER; GILEZAN
REALTY, LLC; JAMIE SHEARER;
JAN WADE; LEN CHOPOVSKY (a/k/a
LEONID CHOPOVSKY); LISA
PAYNE (a/k/a LISA EVERETT);
MOHANA ARLA; PAMELA ZANNI;
RAMA ARLA; RANDALL
CAMPBELL; RAP PROPERTIES,
LLC; REGINA BIDDLE; RENU
KAKAR; RON BIDDLE; SHAM
KAKAR; STEPHANIE GILEZAN;
SUNRISE CUSTOM HOMES; T.J.
FEDERER (a/k/a THOMAS JOSEPH
FEDERER); AND TOM BERWAGER                          APPELLEES

AND


NO. 2025-CA-0627-MR


PAMELA BLAIR                                        APPELLANT


APPEAL FROM JEFFERSON CIRCUIT COURT
v.          HONORABLE JULIE KAELIN, JUDGE
ACTION NO. 19-CI-005241 & 19-CI-005335, & 20-CI-006226


SANCTUARY BLUFF
HOMEOWNERS ASSOCIATION,
INC.; DAVID WEINSTEIN; DWIGHT
HICKERSON; EXP REALTY LLC;
GARY SHEARER; GDS BUILDER
AND REMODELER; GILEZAN
REALTY, LLC; JAMIE SHEARER;

-4-

JAN WADE; LEN CHOPOVSKY (a/k/a
LEONID CHOPOVSKY); LISA
PAYNE (a/k/a LISA EVERETT);
MOHANA RAMA; PAMELA ZANNI;
RAMA ARLA; RANDALL
CAMPBELL; RAP PROPERTIES,
LLC; REGINA BIDDLE; RENU
KAKAR; RON BIDDLE; SHAM
KAKAR; STEPHANIE GILEZAN;
SUNRISE CUSTOM HOMES; T.J.
FEDERER (a/k/a THOMAS JOSEPH
FEDERER); AND TOM BERWAGER                     APPELLEES


<u>OPINION AFFIRMING IN PART,
VACATING IN PART, AND REMANDING</u>

** ** ** ** **

BEFORE:  CETRULO, COMBS, AND L. JONES, JUDGES.

CETRULO, JUDGE:  In this consolidated appeal, Pamela Blair ("Blair") appeals seven orders of the Jefferson Circuit Court:  (a) six orders cumulatively dismissing all her claims (against her neighbors, homeowners' association, related real estate companies, and various builders) and (b) one order foreclosing on her property. After review of the more than 6,000-page record, numerous briefs, applicable law, multiple orders by this Court, and those by the circuit court, we affirm the orders dismissing, and affirm, in part, the summary judgment foreclosure order, but vacate and remand for additional proceedings as to the attorneys' fees only.

-5-

# BACKGROUND

## A. Brief Overview

In December 2017, Blair purchased the home and property designated as Lot 9 in Sanctuary Bluff ("Sanctuary Bluff" or "Subdivision"), a residential subdivision in eastern Jefferson County, Kentucky. As a deed-restricted community, Sanctuary Bluff is governed by recorded Declarations and Covenants, Conditions, and Restrictions ("CCRs"). By virtue of home ownership in the subdivision, the residents are members of the Sanctuary Bluff Homeowners' Association ("HOA") and subject to the CCRs and the HOA's Bylaws.

After moving into Sanctuary Bluff, Blair began to have concerns about both the new construction of a residence on the adjacent lot ("Lot 8") and various retaining walls throughout the Subdivision, including a retaining wall located on or near the rear of her property. Blair sought to have the Lot 8 new construction torn down, the Subdivision's retaining walls to be stabilized and maintained, and for various neighbors, builders, developers, and others to pay damages. She also challenged the validity of the HOA (as an entity capable of enforcing the CCRs and Bylaws) and withheld her HOA fees for a time. Blair pursued the matter before the HOA, the Louisville Metro Board of Zoning Adjustment ("Zoning Board"), and eventually the court system. What ensued was a largely unproductive legal cacophony.

This litigation – the "HOA Action" and the "Foreclosure Action" – is the result of 19 counts brought by Blair, against more than 20 parties, in six complaints, within at least three consolidated circuit court cases, that resulted in 10 Court of Appeals cases, six of which make up this consolidated appeal, with more than 20 pertinent briefs.[1]  Our analysis does not require a recitation of the entire record or procedural background, and we have limited our review to those facts, arguments, and parties necessary for a full and fair disposition.

**B. Retaining Walls**

Sanctuary Bluff's original developers built most of its homes between 2007 and 2009.  In 2012, a second owner acquired Sanctuary Bluff in a foreclosure action.  After acquiring Sanctuary Bluff, the second owner commissioned GEM Engineering, Inc. ("GEM Engineering") to provide an evaluation of the retaining walls throughout the Subdivision.  GEM Engineering determined the retaining walls did not comport with standard guidelines, were "not stable in the long term," and without stabilization they were likely to fail.  Sanctuary Bluff's second owners then sent the "GEM Engineering Report" to all the members of the HOA, (apparently) did not perform any stabilization work, and sold the Subdivision to

---

[1] Four of Blair's appeals to this Court are not included in this case:  No. 2023-CA-0724-I (this Court dissolved a temporary injunction); No. 2024-CA-0645-MR (this Court dismissed as duplicative); No. 2024-CA-0857-MR (this Court dismissed on procedural grounds); and No. 2024-CA-0992-MR (Blair's appeal in a different action).

**Appellee RAP Properties, LLC** ("RAP Properties").  RAP Properties bought the Subdivision "as is" presumably with knowledge of the GEM Engineering Report.[2]

In May 2013, RAP Properties sold Lot 9 – Blair's eventual property – to a builder, an entity not a party to this action ("Blair's home builder").  The record does not show that RAP Properties did any work to stabilize the retaining wall on or near the rear of Lot 9 prior to its sale.

Blair's home builder constructed a residence on the lot, and in September 2013, sold the property to a doctor.  The record does not show that Blair's home builder did any work to stabilize the rear retaining wall prior to selling Lot 9.  The doctor later testified that before or during her purchase she was not told of any problems or concerns about the retaining wall along her property line, and in fact, she was told the wall was "fine."

In January 2016, the doctor learned about the GEM Engineering Report from the realtor she contracted with to sell her home, and a few days later she received a copy of that report.  Mid-2016, one of the parties involved in the sale to the doctor commissioned a structural engineer to evaluate the retaining wall at the rear of the doctor's property, Lot 9.  This "Second Engineering Report"

---

[2] This statement is contested.  A later arbitration determined RAP Properties had "ample opportunity to inspect [Sanctuary Bluff]" including "all materials delivered to members of the [HOA]. . . ."  However, RAP Properties' then managing member testified he was unaware of the GEM Engineering Report at the time of the closing as he did not read the documents (including the GEM Engineering Report) provided by the seller.

stated that the wall was stable, but emphasized the evaluation was not comprehensive or technically exhaustive. In January 2017, the doctor retained another engineering company to evaluate the retaining wall. This "Third Engineering Report" concurred with the GEM Engineering Report and, upon independent inspection, determined the wall was not stable in the long term and presented "a significant hazard for persons in the immediate vicinity."

In December 2017, Blair purchased Lot 9 from the doctor. The doctor fully disclosed the retaining wall concerns with Blair. Blair later testified that *prior to purchasing her home*, she read all three engineering reports and initialed an acknowledgement that she read each report. Blair admitted that her purchase price was significantly reduced due to those engineering reports and the rear retaining wall's structural concerns.[3]

### C. Lot 8, the Adjacent Property

In October 2018, **Appellee Sunrise Custom Homes LLC** ("Sunrise") purchased Lot 8, a vacant lot immediately adjacent to Blair's property. In January 2019, Sunrise obtained a *new construction* building permit ("First Permit") to build a home on Lot 8. This First Permit conformed with Sanctuary Bluff's CCRs. After

---

[3] The doctor was hoping to sell the property for around $800,000, but as she later received a $385,000 arbitration award against her sellers, she agreed to a sale price of $500,000 with Blair. Blair later testified that prior to purchasing her home, she knew of the doctor's arbitration award and the reason for the sizeable reduction in the sale price.

the home had been partially constructed, it was determined that the home did not conform to the First Permit nor the 30-foot setback required by the CCRs. The parties disagree as to whether this error was due to oversight/mistake or done as an intentional cost-savings tactic. Blair asserts the plans for the Lot 8 construction were never submitted to the Sanctuary Bluff's Architectural Review Committee ("Architectural Review Committee") within the HOA as required by the CCRs.

In January 2019, Sunrise sought a variance for the building permit violation from the Zoning Board. Blair opposed the variance as did **Appellee Ronald Biddle**, the then head of the Architectural Review Committee. The Zoning Board denied Sunrise's request for a variance and withdrew the First Permit.

In late June or early July 2019, Sunrise then sold Lot 8 to Ronald Biddle and his wife, **Appellee Regina Biddle**. Ronald Biddle, a realtor and developer, hired general contractor **Appellee Gary Shearer** ("Shearer") and his company, **Appellee GDS Builder and Remodeler** ("GDS Builder"), with the intention of finishing the Lot 8 structure and bringing it into compliance. In July 2019, the Biddles, through Shearer and GDS Builder, obtained a *renovation* building permit, more specifically a "residential addition" permit ("Second Permit"). In the months that followed, GDS Builder redesigned the home, removed portions closest to the street, and completed the home. Despite their renovation efforts, the newly

completed Lot 8 residence still violated the setback by approximately two feet, and a front yard retaining wall still violated the setback by approximately 15 feet. In April 2020, the Biddles applied for another variance, and the matter was heard at the Zoning Board's June 2020 public meeting. This time, the Zoning Board granted the variance over Blair's opposition. Subsequently, in May 2022, the HOA voted to approve the Zoning Board's variance.

### D. Zoning Board Action – NOT on Appeal

The Zoning Board Action is *not* part of this appeal, but we must nonetheless give a brief overview of that action for foundational purposes.

Initiating the Zoning Board Action, Blair appealed the Zoning Board's grant of a variance to the Jefferson Circuit Court (No. 20-CI-004093). In the Zoning Board Action, the circuit court affirmed the Zoning Board's grant of a variance, but this Court later determined that the Zoning Board did not make all of the factual findings required by Kentucky Revised Statute ("KRS") 100.243. Thus, we vacated the variance and remanded the matter for further proceedings. *Blair v. Louisville Metro Bd. of Zoning Adjustment*, No. 2023-CA-0217-MR, 2023 WL 8656414, at *4 (Ky. App. Dec. 15, 2023).

On remand, the Zoning Board entered additional findings consistent with this Court's instructions and again approved the variance in May 2024. It is unclear to this Court if/when the HOA again approved the variance. However,

-11-

Blair again challenged the Zoning Board's decision before the circuit court and this Court, but as of February 2026, Blair had been unsuccessful in her attempts to get the Zoning Board's grant of a variance vacated or reversed. *See Blair v. Louisville Bd. of Zoning Adjustments*, No. 2024-CA-0992-MR (Ky. App. Jul. 22, 2025) (dismissing Blair's Zoning Board Action appeal on procedural grounds as the order lacks finality pursuant to Kentucky Rule of Civil Procedure ("CR") 54.02).

### E. The HOA Action – THIS Appeal

While the Zoning Board Action was proceeding, three other actions were instituted before the Jefferson Circuit Court that were rooted in the same core facts but contained tangential legal claims to the Zoning Board Action. Ronald Biddle, Shearer, and GDS Builder initiated one action, and Blair filed the other two. These three consolidated circuit actions are the root of this appeal.

In August 2019, Ronald Biddle, Shearer, and GDS Builder filed suit against Blair in Jefferson Circuit Court (No. 19-CI-005241), alleging defamation, intentional interference with commercial relations, and negligent interference with commercial relations. They asserted Blair had accosted their workers, made slanderous statements to their contractors, called the police on their workers for "interfering" with her swimming pool, and sent a libelous letter to other Sanctuary Bluff residents.

-12-

Also in August 2019, Blair filed suit in Jefferson Circuit Court (No. 19-CI-005335) against the Biddles, Shearer, GDS Builder, the HOA and its directors (in their official and personal capacities), developer RAP Properties (and its members), real estate companies (and their realtors) involved with Sanctuary Bluff sales, a code enforcement officer, several of her neighbors, and the original Lot 8 builder, Sunrise.[4] Through the course of this HOA Action, Blair filed six complaints, her original complaint plus five amended complaints, (at least two of which were *pro se*) between August 2019 and June 2022.[5] Ultimately, Blair alleged a "massive amount of violations of State and local laws" totaling 19 counts including, but not limited to, nuisance, breach of duties, breach of contract, fraudulent representation, trespass by water intrusion, and negligence.[6] Blair sought, among other requests, strict enforcement of the CCRs (although she later

---

[4] Not all parties were named in Blair's original complaint. Through her five amended complaints and several circuit court orders, parties were subsequently added, modified, and dismissed. For instance, Blair added a claim against the HOA in her first amended complaint; in February 2020, the circuit court dismissed the HOA; Blair brought the HOA back in the action with her third amended complaint; the circuit court again dismissed the HOA in December 2021; Blair brought the HOA back into the action with her fifth amended complaint; the circuit court again dismissed.

[5] Blair filed her original complaint in August 2018 and subsequent amended complaints in September 2019, March 2020, November 2020, February 2021, and June 2022.

[6] We need not discuss all of the claims in Blair's complaints as not all her claims are relevant to this appeal and/or rooted in sound law. For instance, Blair claimed tortious interference and breach of contract with agreements to which she was not a signee, made accusations against entities not parties to the suit, failed to appreciate the distinction between a person's personal capacity versus his/her professional capacity, included rambling factual recitations/accusations that were irrelevant to the present litigation, and requested relief beyond a court's reach.

claimed the HOA was unable to enforce the CCRs), injunctions against the HOA and builders, recovery for intentional infliction of emotional distress, and attorneys' fees. Litigation ensued for the next five years.

At the core of Blair's evolving arguments were the following claims: (1) developer RAP Properties breached its duties to maintain the retaining walls, to timely and/or properly transition the Board of Directors ("HOA Board"), and failed to enforce the CCRs and HOA Bylaws when it had control of the HOA; (2) the HOA was not properly formed, and hence, its HOA Board acted negligently and/or fraudulently by engaging in HOA matters without proper organizational formation; (3) the HOA and its past and present HOA Board failed to carry out their duties by allowing, adopting, approving, and/or not stopping the Lot 8 construction, and personally and financially benefited from that failure; (4) Sunrise, the original builder of the Lot 8 residence, intentionally violated the CCRs and failed to lay a foundation consistent with its First Permit, and thereby, caused damage to Blair's property, reduced the value of her home, and intentionally caused her emotional distress; (5) Ronald Biddle, the subsequent owner of the Lot 8 residence, prior HOA Board Member and former Architectural Review Committee director, fraudulently manipulated the purchase of the Lot 8 property, breached his duties by failing to enforce the CCRs and HOA Bylaws, intentionally caused Blair emotional distress, and negligently caused damage to her property; (6) the Biddles' general

-14-

contractor, Shearer, and his company, GDS Builders, willfully failed to adhere to the Second Permit, intentionally misled the Zoning Board by requesting a "renovation" permit instead of an additional "new construction" permit, caused damages to Blair's property through its poor/improper construction, and caused her emotional distress; and (7) **Appellee Randall Campbell**, the current owner of Lot 8, by virtue of his ownership, continues to cause damage to her property.

The beginning of the end for Blair's litigation coincided with Jefferson Circuit Court Judge Charlie Cunningham's swan song order prior to his retirement in December 2022.[7] This "Omnibus Order" is not on appeal, but it lays the foundation for what is to come. Relevantly, the Omnibus Order clarified (1) that the members of the HOA Board, in their official capacities, were previously dismissed, while the HOA, as an organization, remained in the suit; (2) the members of the HOA Board who voted to approve the variance were dismissed (and/or not permitted to be re-joined by Blair); and (3) that it was premature to

---

[7] Judge Cunningham wrote, "It will almost certainly be the undersigned's last act as the judge in Division 4 of Jefferson Circuit Court; and thus, this judge goes out with a whimper rather than with a bang! At the risk of acting injudiciously, the Court feels compelled to comment on the general path of this seven-volume, four-case piece of litigation. It has gone back and forth, with punches and counterpunches. Yet, what has anybody actually accomplished and what is the path forward where any client will shake their attorney's hand when this is all said and done and say, 'I'm glad I met ya!'? Years of discovery, trials, and appeals from now, it seems likely all the litigants will be disenchanted with each other (many of whom are neighbors), with the lawyers, and with the 'system.' The financial and emotional cost will be extraordinary. Yet, that is sometimes the unavoidable cost of seeking justice."

dismiss Blair's motion for judgment on defamation, tortious interference, and her claims against the HOA for approving the variance.

Finally, between April 2024 and September 2024, the Jefferson Circuit Court entered six orders – now on appeal – essentially dismissing all of Blair's claims. Collectively, those orders – although in large part, the April 2024 and May 2024 orders – dismissed Blair's claims against the HOA and its former and current Board.[8] Blair repeatedly argued the HOA and its former and current Board should be personally and officially liable for voting to accept the Zoning Board's grant of a variance. However, the circuit court held that Blair's numerous complaints were "ambiguous" and did "nothing to distinguish" the actions taken by HOA directors in their official and individual capacities. As Blair failed to differentiate between their capacities, conflated her arguments, and "provided nothing to support her claims" against the HOA and its Board, despite years of litigation, the court determined dismissal of those HOA parties was proper. The court determined Blair did not show how the HOA's approval of the Zoning

---

[8] It has been a challenge for this Court to unweave the procedural history of this litigation. It appears, instead of moving the litigation forward after an adjudication, Blair was allowed to continue arguments as if no adjudication happened, and the circuit court then readdressed matters anew in later orders. For instance, the May 2024 Order appears to adopt prior rulings dismissing various HOA Board members, grant the HOA's cross-motion for summary judgment filed in November 2022, and dismiss three specific counts. However, Blair continued to assert the same arguments underlying these May 2024 findings as if the circuit court had not adjudicated the issues. As such, the later orders dismissing for lack of prosecution readdress her arguments and again dismiss, albeit with new conclusions. Hence, the later orders encapsulate the May 2024 Order, and our review will focus on the later orders dismissing for lack of prosecution.

Board's grant of a variance created liability for its voting members. Also, repeating findings from the prior Omnibus Order, the court stated it agreed "there [was] no reason to think [the HOA Board] bear[ed] any personal liability for their votes."

The circuit court's June 2024 Order granted the HOA's and GDS Builder's motions to dismiss for lack of prosecution and dismissed all of Blair's claims against all of the defendants.[9] In this order, the circuit court stated that although *the trial date was merely three months away*, Blair had neither sent discovery nor fully responded to discovery requests by various defendants. Further, the circuit court stated the following:

> [Blair] failed to take the requisite actions to prosecute all the remaining viable causes of action she brings against the codefendants in this lawsuit, including complying with the court's orders designed to move this case along.
>
> A cursory review of the record indicates that over the last 12 months, Ms. Blair has not served any discovery requests on the parties, has not taken a single deposition, has not retained any experts to support her claims, and has not filed any motions to advance her claims. Most recently, she's refused to comply with the Court's orders which compelled her to provide supplemental discovery responses and sit for a deposition. Instead of doing anything to advance her claims since May 2023, she's filed several separate motions to alter, amend, or vacate this court's orders, without actually complying with them.

---

[9] This interlocutory order originally did not contain finality language, but in April 2025, it was reentered verbatim with finality language. For chronological clarity purposes, we shall refer to it as the "June 2024 Order."

-17-

To be clear, both sides have filed extraneous motions in this case, but only Ms. Blair has the duty and power to move the case forward to judgment if she truly wishes to do so, and she has failed in this regard despite multiple delays and stays, one designed to allow her to procure counsel if she wished to do so.[10]

Moreover, the circuit court walked through the factors to consider before granting a motion for dismissal for lack of prosecution as described by *Ward v. Housman*, 809 S.W.2d 717, 719 (Ky. App. 1991) (citing *Scarborough v. Eubanks*, 747 F.2d 871, 875-78 (3d Cir. 1984)), **and** considered the totality of the circumstances as required by CR 41.02. The court noted Blair's inaction, including but not limited to, her failure to take any depositions, to tender or fully respond to discovery, to retain experts, or to file any substantive motions relative to any expert witnesses. She did not respond to opposing counsel's attempts to schedule an inspection of her lot nor conduct any written discovery. The court noted Blair's history of dilatory conduct, her demonstration of willful inaction, the resulting prejudice of such inaction to the defendants, and the court's belief that there is nothing further that it could do to prompt Blair to advance her claims. These considerations, actions, and inactions, the court determined, were likely due to the fact her claims lacked merit. The court noted that Blair was "now refusing

---

[10] The circuit court noted Blair initiated the action *pro se*, "retained counsel for most of the last three years" from two different law firms sequentially, and then again proceeded *pro se*. Prior to entering this order, the circuit court paused litigation while Blair sought new counsel, but she was unable to retain representation, and the litigation proceeded with Blair *pro se*.

-18-

outright to comply with the Court's orders" as she had failed until then to provide supplemental discovery responses to the HOA and to schedule the completion of her deposition. The court observed that "there seems to be no reason to believe that there is any alternative sanction that would effectively guide [Blair] into action." Ultimately, the circuit court held that Blair failed to make a good faith effort to prosecute the action, her inaction was fatal to her claims, and despite years to do so, she failed to meet her burden of advancing the causes of action and allegations within her numerous complaints.

Despite this strongly worded June 2024 Order, Blair continued rearguing previously adjudicated matters and filing motions that lacked substance. Hence, in the subsequent orders, the circuit court incorporated its June 2024 Order and granted motions to dismiss for lack of prosecution filed by RAP Properties (July 2, 2024 Order), Campbell, the current owner of Lot 8 (July 30, 2024), and, *again*, the HOA and GDS Builder (September 2024).

### F. Foreclosure Action – on Appeal

Lastly, in a December 2024 Order, the circuit court granted the HOA's motion for summary judgment on its counterclaim regarding foreclosure.

In November 2022, the circuit court permitted the HOA to amend its complaint. In this new amended complaint, the HOA argued Blair failed to pay more than $18,000 in assessments and fees to the HOA, rented her property in

violation of the CCRs, and failed to register her property as a short-term rental with the Louisville Metro Government. As such, the HOA argued it had a valid and continuing lien of more than $70,000 against Blair warranting a judicial sale. Conversely, Blair argued the HOA was not a valid entity and thus, it was unable to enforce the CCRs, and she asserted the lien in question had been paid.

In its December 2024 "Summary Judgment" Order, the circuit court held the HOA was a valid entity; the CCRs and HOA Bylaws applied to Blair; she violated the CCRs by engaging in a short-term rental property business; and Blair had not satisfied her debt. The court ordered Blair to pay all overdue HOA fees (with interest) plus all fees (also with interest) associated with the impermissible renting of her home. The court stated foreclosure was permissible and referred the matter to the Master Commissioner for judicial sale.

Blair appealed the six April to September 2024 Orders dismissing her claims in the HOA Action, and the Summary Judgment in the foreclosure action.

## ANALYSIS

We are a court of review, not factfinders, and as such our scope is limited to those orders properly on appeal, and the findings and conclusions in those orders.[11] Yet, before we review the orders dismissing for lack of prosecution

---

[11] Blair's appellant briefs appear to challenge the Omnibus Order and possibly other circuit court orders prior to April 2024, but we shall limit our review to those circuit court orders named in Blair's Notices of Appeal. *See* Kentucky Rule of Appellate Procedure ("RAP") 2(B)(1)

and the Summary Judgment, we must first address our Rules of Civil Procedure,

rules Blair does not feel compelled to follow.

### A. Civil Procedure

Our Commonwealth has adopted some rules of civil procedure that a

*pro se* litigant is unlikely to fully appreciate nor successfully maneuver. The rules

pertaining to interlocutory orders, finality, and jurisdiction likely fit into that

category. By way of example, Blair argues some of the circuit court orders on

appeal are improper (and unenforceable) because they vary from *prior*

interlocutory orders. However, interlocutory orders (without specific finality

language) are "subject to revision at any time before the entry of judgment

adjudicating all the claims and the rights and liabilities of all the parties."

CR 54.02. Hence, the circuit court did not err even if it altered prior, non-final

interlocutory orders. In *this* legal cacophony, that issue is but a piddling peep.

However, on other civil procedure misconceptions, Blair's

unwillingness to listen, learn, and pivot can no longer be overlooked. In almost

every brief and every motion she filed within the last two years, both before the

circuit court and this Court, Blair challenged the circuit court's jurisdiction and its

ability to continue litigation after she appealed one *specific* issue. She argued the

(requiring the appellant to specify "the date of, the judgment, order, or part thereof appealed from").

-21-

circuit court was divested of *all* jurisdiction after she filed a notice of appeal, and hence, various other orders subsequently entered by the circuit court must be vacated. (Blair even moved this Court to hold opposing counsel and the circuit court judge, by name, *in civil contempt and impose sanctions* for continuing litigation after a limited interlocutory order with proper finality language was appealed. We declined to do so.) However, *as we have previously held*, interlocutory orders made final and appealable pursuant to CR 54.02, *do not* divest the circuit court of jurisdiction on the *other* remaining matters against *other* parties and/or *different* claims. *See Commonwealth Fin. & Admin. Cabinet v. Wingate*, 460 S.W.3d 843, 847-48 (Ky. 2015). In fact, this Court entered orders specific to Blair's litigation efforts in October 2024 (No. 2024-CA-0650-MR) and again in April 2025 (No. 2024-CA-0857-MR), detailing finality rules as they relate to interlocutory orders. Despite this Court's clear guidance, she nonetheless disregarded our conclusions and has *continued* to present a version of her erroneous jurisdictional argument at least 15 additional times to this Court.

Similarly, in appeal No. 2025-CA-0003-MR, Appellee HOA moved to strike Blair's appellant brief and dismiss the appeal due to her nine hallucinated citations and persistent misquoting/misinterpretation of precedent. In her response, Blair admitted to using artificial intelligence ("AI") and stated she had caught the mistakes prior to submission, but in her haste, she submitted the wrong draft. This

Court then denied the HOA's motion to dismiss the appeal but granted its motion to strike Blair's brief and allowed her to refile a compliant brief with a certification that her brief was prepared without AI. Ten days later, Blair submitted a brief with a certification that while she used AI for editing purposes, she did not utilize it for drafting or research. The HOA renewed its motion to dismiss the appeal as Blair's latest brief again contained hallucinated precedent. Blair responded by admitting her brief contained one hallucinated case that was "erroneously repeated." In an abundance of grace, this Court denied the HOA's motion to dismiss. Even so, Blair closed the appellate briefing window by submitting a reply brief with yet another hallucinated case[12] and absent an AI certification. This deliberate disregard for a Court's ruling, and her recalcitrant approach to litigation has become a pattern and such actions have likely sabotaged her own litigation.

Nonetheless, we shall address the merits of the matter in order to bring *some* much-needed finality.

### B. HOA Action

In challenging the circuit court's dismissals, Blair reargues the merits of her case, making the same unsupported arguments she presented to the circuit

---

[12] Blair cited "*Pinnacle Homeowners Ass'n, Inc. v. JPMorgan Chase Bank*, 502 S.W.3d 891 (Ky. App. 2016)" for the proposition that the HOA's recorded lien was unable to accrue additional charges in the absence of "continuing lien language" in the recorded lien and CCRs. Yet, "502 S.W.3d 891" belongs to a Texas case about sexual assault. Also, *Pinnacle Homeowners Ass'n, Inc. v. JPMorgan Chase Bank, N.A.*, No. 2016-CA-000084-MR, 2018 WL 1357494 (Ky. App. Mar. 16, 2018), deals with lien priority, *not* continuing liens.

court.  For instance, Blair asserts a prima facie case for nuisance based on Lot 8 residence's noncompliance with the CCRs and the building permits.  She contends that because the HOA did not follow their own organizational procedures for elections and/or public meetings, all the actions taken by the HOA Board were improper.  She appears to argue that photographs she took of her backyard are sufficient – without additional expert testimony or further foundation – to establish her right to recover damages.  Again, she argues without proof or clarity, that the Lot 8 residence was "unauthorized" and "substandard."  However, due to the scope of our review, we cannot address these arguments as presented.

Instead, the question on review first – for the orders dismissing Blair's claims in the HOA Action – is whether the circuit court erred in its application of the *Ward* factors, 809 S.W.2d at 719, and/or abused its discretion in applying CR 41.02.  Rule 41.02 allows the court to involuntarily dismiss an action for a plaintiff's failure "to prosecute or to comply with the [civil rules] or any order of the court."  CR 41.02(1); *see Stapleton v. Shower*, 251 S.W.3d 341, 343 (Ky. App. 2008).  Our standard for review is set out in *Jones v. Pinter*, 642 S.W.3d 698, 701 (Ky. 2022):

> We review dismissals under CR 41.02 for abuse of discretion. [*Jaroszewski v. Flege*, 297 S.W.3d 24, 32 (Ky. 2009).]  Under this standard of review, we will reverse the trial court's dismissal only if it was arbitrary, unreasonable, unfair, or unsupported by sound legal

principles. [*Goodyear Tire & Rubber Co. v. Thompson*, 11 S.W.3d 575, 581 (Ky. 2000).]

. . .

Consideration of a motion to dismiss under CR 41.02(1) requires fact-specific determinations that are left to the sound discretion of the trial court. [*Jaroszewski*, 297 S.W.3d at 32.] The trial court must base its assessment on the totality of the circumstances. [*See id.* at 36.]

Still, a trial court's discretion is not unfettered and is subject to an important limitation. Our courts have long recognized that CR 41.02(1) dismissal with prejudice is an "extreme remedy." [*Manning v. Wilkinson*, 264 S.W.3d 620, 624 (Ky. App. 2007); *Toler v. Rapid Am.*, 190 S.W.3d 348, 351 (Ky. App. 2006); *Polk v. Wimsatt*, 689 S.W.2d 363, 364-65 (Ky. App. 1985).] As a result, we must "carefully scrutinize the trial court's exercise of discretion" when reviewing dismissal with prejudice under CR 41.02(1). [*Manning*, 264 S.W.3d at 624.]

In considering the totality of the circumstances, trial courts may consider the factors espoused in *Ward v. Housman*. [*See* 809 S.W.2d 717, 719 (Ky. App. 1991) (citing *Scarborough v. Eubanks*, 747 F.2d 871, 875-78 (3d Cir. 1984)).] *Ward* provides a nonexclusive list of factors for consideration when analyzing the totality of the circumstances relevant to a motion to dismiss for lack of prosecution under CR 41.02. [*Id.*] The *Ward* factors are: "1) the extent of the party's personal responsibility; 2) the history of dilatoriness; 3) whether the attorney's conduct was willful and in bad faith; 4) meritoriousness of the claim; 5) prejudice to the other party, and 6) alternative sanctions." [*Id.*]

In its June 2024 Order, the circuit court made specific findings as to

all six factors supplied by *Ward v. Housman* **and** explicitly assessed the totality of

the circumstances. Blair appears to argue the circuit court erred by addressing *all* six *Ward* factors and should be reversed with instructions to consider alternative sanctions, but we do not agree. True, the circuit court need not have discussed all six factors as that list is not exclusive nor exhaustive, but we shall not hold the circuit court's thoroughness against it.

The circuit court determined Blair bore the responsibility for failing to advance, "or to even explore," her claims. While other parties attempted to engage in discovery and move the case along, Blair (while both *pro se* and represented by "capable counsel,") did not engage in "*meaningful* actions about the allegations she made in her Complaint." (Emphasis added.) On appeal, Blair argues she filed a flurry of motions, thereby demonstrating active engagement in her case, but as the circuit court repeatedly noted, filing motions does not always correlate to *advancing* the case. *See Jaroszewski*, 297 S.W.3d at 38 (emphasis added) ("Generally, it is entirely proper for a trial court to consider that a plaintiff has only been acting reactively and has shown no inclination to take *affirmative steps to advance resolution* of the case for an unreasonable period of time as a relevant factor indicating that the plaintiff has not been actively prosecuting the case.").

The circuit court found ample examples of her dilatory conduct. Despite years of litigation, Blair had not retained or identified any experts to support her claims nor filed any timely *substantive* motions related to the defense expert

witnesses. Blair had not taken any depositions, completed her own deposition, nor fully responded to others' requests for additional discovery.[13] The court stated that it had attempted to progress the case and lead Blair toward trial, but Blair failed to comply with the "overwhelming majority" of the court's orders, further demonstrating her willful failure to prosecute her causes of action. In fact, after almost five years of litigation, the circuit court determined "there is no evidence" to support her claims proceeding to trial, and such a failure demonstrates her claims lacked merit and she failed to meet her burden. *See Murphy v. Taxicabs of Louisville, Inc.*, 330 S.W.2d 395, 399 (Ky. 1959) ("[T]he burden of proof is on a plaintiff to establish by sufficient evidence the material facts which constitute his alleged cause of action.").

Moreover, the circuit court noted the prejudice Blair's failures have had on the defendants/appellees: multiple potential witnesses have moved or become otherwise unavailable, memories have faded, and significant time and resources have been spent in defense of the claims. The defense had identified experts pursuant to the scheduling order, but plaintiff did not do so until after the defense experts were identified and after the motions to dismiss were filed. Even then, she submitted old reports and asserted a need for additional time. The court

---

[13] Blair did ultimately produce supplemental discovery responses in May 2024 identifying some "experts" but this was well after the deadlines imposed by the court's trial order entered in August 2023.

noted the September 2024 trial date, but Blair's much delayed deposition was unable to be scheduled until July 2024. Due to her unproductive actions – including the filing of frivolous motions, delays, failures to respond for years to scheduling requests and discovery, etc. – the circuit court determined the defendants/appellees had been "wholly unable to gather discovery as needed" for trial and Blair bore that burden of the resulting prejudice.

Blair argues the circuit court erred by not considering alternative sanctions, but as the court aptly points out, alternative sanctions would likely be ineffective as Blair "is now refusing to comply with the Court's orders." The court's order stated that within the prior six weeks, Blair had failed to comply with an order compelling her to provide supplemental discovery responses to the HOA and with an order directing her to complete her deposition. In fact, the court perceived her delay to be intentional. While she ultimately "somewhat" complied, it was too little and too late. She continued to assert that she was not yet in a position to state her damages, that it was a "pre-discovery stage," and claimed she would supplement. At that point, trial was four months away, and the discovery was two to three years overdue. The circuit court found that while Blair filed motions in the prior year, those motions did not advance the case but instead kept the court "bogged down in revisiting prior rulings."

Clearly, the circuit court assessed the totality of the circumstances, and we detect no abuse of the court's discretion in its decision to dismiss this action with prejudice. No aspect of its application of the *Ward* factors was arbitrary, unreasonable, unfair, or unsupported by sound legal principles. The court acted within the bounds of its broad discretion in granting defendants'/appellees' motions to dismiss for lack of prosecution, and, accordingly, we must affirm its orders dismissing the HOA action for lack of prosecution.

### C. Foreclosure Action

The standard of review upon appeal of an order granting summary judgment is "whether the trial court correctly found that there were no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law." *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996) (citing CR 56.03). Upon a motion for summary judgment, all facts and inferences in the record are viewed in a light most favorable to the non-moving party and "all doubts are to be resolved in his favor." *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476, 480 (Ky. 1991). The trial court "must examine the evidence, not to decide any issue of fact, but to discover if a real issue exists." *Id.* Thus, a summary judgment looks only to questions of law, and we review *de novo*. *Brown v. Griffin*, 505 S.W.3d 777, 781 (Ky. App. 2016) (citing *Coomer v. CSX Transp., Inc.*, 319 S.W.3d 366, 370-71 (Ky. 2010)). Even viewing the facts and inferences

in a light most favorable to Blair and resolving all doubts in her favor, we cannot agree that Blair presented any genuine issue of fact as to the HOA's right to collect HOA fees and assessments that she admittedly had not paid in five years.

Sanctuary Bluff's CCRs allow the HOA to levy assessments, and the CCRS and Bylaws further allow the HOA to recover costs and reasonable attorneys' fees for unpaid assessments. Yet, Blair believed the HOA was not a valid entity and the organization failed to satisfy its maintenance duties, and thus, beginning in October 2019 she stopped paying her monthly fees and assessments to the HOA. The HOA did not withhold benefits and services to Blair despite her non-payment.

In February 2020, the HOA recorded a "First Lien" against Blair's property totaling $1,709 for unpaid fees, assessments, late charges, and legal fees.

In May 2020, after seven months of non-payment, the HOA filed suit against Blair for unpaid HOA fees, assessments, and late charges in Jefferson District Court (No. 20-C-23459). That district court record is not part of the record on appeal, but apparently the action was transferred to circuit court, consolidated with the present action, and converted into the HOA's counterclaim.

In November 2022, the HOA amended its counterclaim and provided an updated accounting to the circuit court showing Blair's debt had grown to $18,098 ($13,197 in assessments, interest, and late fees; $22 in miscellaneous

charges; and $4,879 in legal fees). The record does not include an accounting for the legal fees. A year later, the HOA again amended its counterclaim, asserting Blair now owed $30,340.60 ($20,403.35 in assessments, interest, and late fees, $9,937.25 in legal fees). The HOA also added a foreclosure action based on its continuing lien for unpaid assessments.

Almost four years later, on March 7, 2024, Blair acknowledged the HOA's lien and right to recover fees by paying $2,823 to the HOA. We could not locate a copy of this payment within the record, and it is unclear if Blair ever provided proof of payment to the circuit court. As the recorded First Lien was for $1,709, it is unclear how Blair arrived at her payment amount or why she believed that amount satisfied her HOA debt. Shortly thereafter, she demanded a lien release from the HOA, which it denied, although the payment was credited to her account.

In May 2024, the HOA moved for partial summary judgment. In its supporting memorandum, the HOA asserted Blair now owed $29,927 ($18,309 in assessments, interest, and late fees; $42 in miscellaneous charges; and $11,576 in legal fees). That motion was not immediately ruled upon. Two months later, in July 2024, the HOA again moved for summary judgment, this time arguing: (1) Blair had not paid her HOA dues in five years in violation of the CCRs; (2) she utilized her residence as rental property in violation of the CCRs; and (3) as a

result, the HOA sought foreclosure of Blair's residence to satisfy the "continuing" lien. With its motion, the HOA argued Blair's debt now amounted to $70,991 ($19,220 in assessments, interest, and late fees; $62 in miscellaneous charges; and $51,709 in legal fees). From two months prior, the HOA's new total indebtedness for Blair increased by $40,133 in legal fees alone, without explanation and/or accounting. There was no response to this motion filed by Blair in the circuit court.

In its December 3, 2024 Summary Judgment Order, the circuit court held that the HOA was a valid entity with the ability to enforce the CCRs and Bylaws; that the CCRs and HOA Bylaws applied to Blair; that Blair violated those CCRs and Bylaws; and that the HOA had a valid and enforceable continuing lien. The Order also referred the matter to the Master Commissioner for judicial sale to satisfy Blair's indebtedness. Specifically, the court ordered Blair to pay $70,991 for:

> annual assessments, interest, costs and reasonable attorney's fees due and owing to Sanctuary Bluff [HOA] from October 1, 2019 through July 1, 2024, plus continuing interest, costs and reasonable attorneys' fees on future assessments not paid when due and incurred herein until the obligations are paid in full or the property is sold.

The Order, which was tendered by counsel for the HOA, did not elaborate further about the $70,991 total, nor did the court determine if the *more than $50,000 in attorneys' fees were reasonable* for approximately $20,000 in

-32-

unpaid HOA fees. The next day, on December 4, 2024, the HOA recorded a "Second Lien" totaling $70,991.[14]

On appeal, Blair continues to argue, as she did below, that the circuit court lacked jurisdiction to enter the December 3, 2024 Order because of the pending appeals. This Court has addressed these claims repeatedly, and we decline to do so further. She asserts that she did raise disputes regarding the HOA's authority and validity of the assessments below, but her citations to the record for where these arguments were made do not support her assertions. Rather, her own filings, her payment of some portion of the lien, as well as statements by her prior counsel, all demonstrate that she knew she owed the fees but simply continued to argue that the HOA was not legally entitled to assess fees. She has lost that argument.

On appeal, Blair raises a few compelling questions, but again, it is her own conduct that forecloses our review of those questions. She does not refer us to where these issues were preserved below. She did not file a response to the summary judgment motion below nor appear for the hearing on the same. As she

---

[14] After a stay was denied by this Court, the Master Commissioner scheduled a sale of Blair's home for May 2025. The record includes a report that the sale was cancelled, but that report does not elaborate as to the reason. Blair argues that, on the day of the sale, the HOA demanded $131,328. Blair argues she requested an accounting, but the "HOA refused to provide one" and informed her that $22,089 represented her missed HOA fees while **$87,150 were legal fees**. The record also includes a June 2, 2025 notice that both the First Lien and Second Lien had been released, but no further details were provided.

continued to argue that the circuit court could not proceed in light of the appeals, we must presume that was intentional on her part. Our independent review of the record does not demonstrate where those issues were raised before the circuit court and as such we will not address them here. *See Phelps v. Louisville Water Co.*, 103 S.W.3d 46, 53 (Ky. 2003) (citations omitted) (stating where preservation is lacking, it is not an appellate court's duty to "search the vast record on appeal to make that determination").

Alternatively, apparently recognizing her lack of preservation, Blair then argues that this Court can entertain an argument not presented to the circuit court in order to avert a manifest injustice. *See* CR 61.02 (permitting unpreserved review if a manifest injustice has resulted from a palpable error). On the issue of attorneys' fees only, we conclude that Blair has presented such an issue. There is no indication in the circuit court's order that it considered the significant increase in legal fees for pursuing the unpaid HOA debt. Our courts have long held that in an action where attorneys' fees are sought, a circuit court must determine whether attorneys' fees were warranted in light of a statute, contractual provision, or equitable consideration, and, if so, what amount is reasonable. *Key v. Mariner Fin., LLC*, 617 S.W.3d 819 (Ky. App. 2020). While the circuit court has discretion in determining the fees, generally, this requires some detailed accounting, or at least a review of the reasonableness of the legal fees by the circuit court. *See, by*

*example, Superior Steel*, *Inc. v. Ascent at Roebling's Bridge, LLC*, 540 S.W.3d 770, 787-88 (Ky. 2017); *see also Flag Drilling Co., Inc. v. Erco, Inc.*, 156 S.W.3d 762, 766-67 (Ky. App. 2005).  Here, the circuit court conducted no such review.

Accordingly, we remand for a review of the reasonableness of the attorneys' fees.  To be clear, legal fees for pursuing the unpaid HOA debt should be legal fees *for pursuing the unpaid HOA debt*, not an attempt to recoup litigation fees from other claims.

## CONCLUSION

Therefore, we AFFIRM the Jefferson Circuit Court orders dismissing all of Blair's appeals.  However, in the December 3, 2024 Summary Judgment Order, we VACATE *only* the award and REMAND for further proceedings, including a circuit court review of reasonableness of the attorneys' fees.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Pamela Blair, *pro se*
Louisville, Kentucky

BRIEF FOR APPELLEES
RONALD AND REGINA BIDDLE:

Paul R. Schurman, Jr.
Louisville, Kentucky

BRIEF FOR APPELLEE RANDALL
CAMPBELL:

R. Dale Warren
Louisville, Kentucky

BRIEF FOR APPELLEES HOA AND ITS
BOARD OF DIRECTORS:

Derek Miles
Kenneth C. Whitlock
Louisville, Kentucky

BRIEF FOR APPELLEES RAP PROPERTIES
AND MEMBERS:

David K. Barnes
Matthew R. Londergan
Louisville, Kentucky

BRIEF FOR APPELLEES GARY SHEARER
AND GDS BUILDER:

Denis C. Wiggins
Hunter E. Rommelman
Louisville, Kentucky